**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-30104 |
| Plaintiff - Appellee, | D.C. No. 2:13-CR-00463-BR |
| v. | MEMORANDUM[*] |
| JOHN M. WASSON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted October 14, 2015[**]
Portland, Oregon

Before: FERNANDEZ, GILMAN,[***] and BEA, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

John Wasson occupied land in the National Forest System from April 2012 until March 2013. Some of his time was spent working on a small, unpatented mining claim, but he also set up a permanent campsite and began continuously residing on the land. Wasson did not obtain authorization for this residency from the Forest Service, and he stored human feces in a bucket located on his campsite. The government charged Wasson with violating 36 C.F.R. § 261.10(b) (unauthorized residency on Forest System lands) and 36 C.F.R. § 261.11(d) (improper removal or disposal of sewage). A magistrate judge conducted a trial for these misdemeanor offenses, found Wasson guilty of violating both regulations, and fined him $400. Wasson appealed that decision to the district court, which affirmed the magistrate judge's ruling. He now appeals the district court's judgment.

Wasson presents two arguments. First, he contends that the Forest Service lacks authority to interfere with his occupancy vis-à-vis his mining claim. Second, he contends that the evidence at trial was insufficient to establish that he improperly disposed of or failed to remove sewage from his campsite.

Wasson's first argument is based on the General Mining Law of 1872, which provides that an individual who discovers mineral deposits on federal land "shall have 'exclusive right of possession and enjoyment of all the surface included within the lines'" of his claim. *United States v. Backlund*, 689 F.3d 986, 991 (9th Cir. 2012)

(quoting 30 U.S.C. § 26). The law also states that, "[e]xcept as otherwise provided, all valuable mineral deposits in lands belonging to the United States . . . shall be free and open to exploration." 30 U.S.C. § 22. Wasson apparently reads the law's references to "exclusive . . . possession and enjoyment" and "free and open" exploration as foreclosing Forest Service interference with his mining claim.

This court in *Backlund* addressed a similar argument. It noted that, even if the General Mining Law speaks of "exclusive . . . possession and enjoyment," other statutes—such as the Multiple Use Act of 1955—nonetheless limit a miner's activities. 689 F.3d at 991. Hence, "use of an unpatented mining claim on public land is limited to activities that are reasonably incident to prospecting, mining and processing operations," and such uses are "subject to the right of the United States to manage surface resources." *Id.* The court then concluded that the same regulation at issue in this case—36 C.F.R. § 261.10(b)—is a valid exercise of the government's resource-management rights. *Id.* at 990, 996.

Based on *Backlund*, the Forest Service was entitled to regulate Wasson's occupancy with regard to his mining claim. Further, Wasson's persistent and continual residency on his claim was not "reasonably incident" to the limited scope of his mining activities. Wasson therefore needed to obtain authorization for his residency from the Forest Service. *See* 36 C.F.R. § 251.50 (requiring authorization

for most uses of Forest System lands); *id.* § 261.10(b) (specifically prohibiting residency on Forest System lands without the required authorization). But Wasson failed to do so. The district court therefore did not err in holding that Wasson had violated 36 C.F.R. § 261.10(b).

Wasson's second argument is that the district court lacked sufficient evidence to conclude that he had violated 36 C.F.R. § 261.11(d). That regulation prohibits the following conduct: "Failing to dispose of all garbage, including any paper, can, bottle, sewage, waste water or material, or rubbish either by removal from the site or area, or by depositing it into receptacles or at places provided for such purposes." The regulation thus requires a person to dispose of waste by either (1) removing it from "the site or area," or (2) depositing it "into receptacles or at places provided for such purposes."

In the present case, Wasson stored waste (human feces) in a bucket. The bucket and feces were still present on his campsite when the Forest Service eventually removed Wasson's property, so Wasson himself did not remove the waste from "the site or area." That leaves Wasson with the argument that the bucket qualifies as a "receptacle[] or . . . place[] provided for such purposes." 36 C.F.R. § 261.11(d). Wasson argues that the phrase "provided for such purposes" modifies only the word "places," rather than modifying both "receptacles" and "places." He therefore contends that a person can comply with § 261.11(d) by depositing waste into *any* sort

of "receptacle," regardless of whether it was provided for the purpose of waste disposal.

Wasson's argument rests on the "rule of the last antecedent," *see, e.g.*, *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 343 (2005) ("[T]he grammatical rule of the last antecedent [states that a] limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." (internal quotation marks and ellipsis omitted)), but this rule is "not an absolute and can assuredly be overcome by other indicia of meaning," *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). In the current case, "other indicia of meaning" demonstrate that 36 C.F.R. § 261.11 is intended to prevent the release of potentially hazardous or unsanitary material. *See, e.g.*, 36 C.F.R. § 261.11(b) (prohibiting the possession of "refuse, debris, or litter in an exposed or unsanitary condition"); *id.* § 261.11(c) (prohibiting the release of "any substance" that might cause pollution in a stream or lake).

Contrary to this regulatory purpose, Wasson's reading of 36 C.F.R. § 261.11 would allow a person to place waste of any kind in any type of receptacle, regardless of whether the waste is hazardous or if the receptacle is designed to prevent the release of such waste. For example, a person could comply with Wasson's reading of 36 C.F.R. § 261.11(d) by depositing waste such as the human feces at issue in this case in anything from a used coffee cup to an empty soda can to a plastic garbage bag.

*See* Merriam Webster's Collegiate Dictionary 975 (10th ed. 1997) (defining "receptacle" as anything that "receives and contains something"). Such haphazard disposal of dangerous waste would undercut the Forest Service's goal of maintaining the forest in a sanitary condition, so we do not read subsection (d) of the regulation as broadly as Wasson would like. Instead, we read the regulation to require the disposal of waste in a receptacle specifically provided for the purpose of waste disposal.

The question then becomes whether the district court had sufficient evidence to conclude that Wasson's bucket was not such a receptacle. Relevant to this issue is the fact that Wasson's "Notice of Intent" had informed the Forest Service that any human waste would be "collected in a port-a-potty" at his campsite. The Forest Service approved this arrangement. But Wasson conceded during trial that he collected his feces in a bucket, not in a port-a-potty. This concession demonstrates that Wasson placed his waste in a receptacle that had not been provided for the purpose of human waste disposal, so the district court did not err in concluding that there was sufficient evidence that Wasson violated 36 C.F.R. § 261.11(d).

For all of the above reasons, WE AFFIRM.